Everyone, all counsel are here on the three argued cases. We have three argued cases today and we have one case on submission. The case on submission is United States v. Nolasco. Since counsel are here, we have a pretty short calendar today. I'm going to dispense with reading the calendar. The first case is Heskyoff v. Sling Media. If counsel is present, I think we're ready to proceed. Thank you. Robert Klax, Plaintiff's Appellant Good morning. May it please the Court. I'm Robert Klax. I'll be speaking for the Plaintiff's Appellant here. Your Honors, the Court made two principal errors which we believe require reversal. Firstly, the Court misconstrued the choice-of-law clause within the end-user legal agreement, which is included and must be agreed to by the consumers in order to use their devices, and secondly, the Court misconstrued consumer protection laws, specifically New York GBL Section 349, in disallowing plaintiffs to amend their case after determining that New York law applied in finding that consumers have no right to expect an ad-free experience in a product they purchased, which doesn't disclose that advertisements will be required to be viewed in order to use the product. So to begin with the choice-of-law clause. Roberts, how is the clause here different from the clause in Croc, our decision in Croc? Well, I think, Judge Chin, if you were to look at the holding of Croc, Croc v. Lipsey instructs us that one is to look at the scope of the contract in order to decide whether the choice-of-law clause applies to the claims. And doing so here, we have a choice-of-law clause within a contract which purports to the clause. The clause in Croc read, ''This mortgage shall be governed by and construed in accordance with the laws of Massachusetts.'' And if you sub out California for Massachusetts and agreement for mortgage, it's virtually identical to the clause here. I agree entirely, Your Honor. And I think it's worth noting also that in Section 9, not only is the choice-of-law clause which provides for California law as broad as it is in Croc, but we also have an explicit clause which purports to govern essentially every all-encompassing aspect of this transaction, including all theories of liability, certainly the one that's used in the claims in this case, whatever their merit, are a theory of liability. You refer to Section 9 of the contract as a choice-of-law clause? No, Your Honor. The choice-of-law clause is in Section 12. Okay. But you refer to Section 9 to support your argument that the – on the choice-of-law and you – that's why you say that it should be only California choice-of-law. Do I read your argument right? That is correct, Your Honor. But if that's true, I don't understand how that's consistent with the final paragraph of Clause 9 or Section 9, which specifically says some jurisdictions do not allow the exclusion of limitation or a limitation of incidental or consequential damages. So the above limitation or exclusion may not apply to you. Plainly, the clause contemplates that the laws of various jurisdictions, not just one, will apply. Well, Your Honor, Magnuson-Moss, the Federal Magnuson-Moss Warranty Act, requires that language because, of course, while the parties might agree to a certain choice of law, Congress might determine the application of some other law which would preempt this agreement. But there is nothing that would preempt this agreement. We believe that the ruling and holding of Kroc v. Lipsey, which requires the inquiry about whether the contract itself, all of its terms, are, quote, sufficiently broad to encompass the claims which are stated and brought within the choice-of-law clause. So we think that Section 12 is clear enough, but just so there's no doubt that this are which are being brought in this case. We think Section 9 couldn't possibly make it more clear. All causes of action, all theories of liability are governed by this contract. On the second issue, what is the deceptive conduct here? Well, the deceptive conduct is that the defendant had sold the sling box units without disclosing in any way that it would one day require consumers to view advertising, unsolicited, unwanted advertising, in order to be able to use them. And the plaintiffs have not only alleged that the the failure to disclose advertisements is somehow deceptive and misleading. I mean, can you just explain that? Yes, Your Honor. Under this Court's holding in the Staples case, as well as the court of appeals holding in the Oswego case, it's quite clear that deception is not only what we would term deception under the common law. It need not be spoken. There need be no scienter. It might be established by the circumstances. And we have alleged circumstances which evidence is — Aren't consumers bombarded constantly with ads everywhere? If you buy — in the old days when you bought a DVD, you were subjected to ads everywhere. I mean — But, Your Honor, I think the big distinction is this is over a device that they have sold you. Every device now, or potentially every device, thanks to the Internet, will now be connected to the Internet. Although I didn't own the product when we submitted these briefs, I now have an Amazon Alexa in my kitchen, which I can ask what the weather is. I purchased it and I own it, just like these consumers own a Slingbox. If it told me, Alexa, what's the weather? Well, it's sunny out and you should buy some suntan lotion on Amazon. Well, I think I would not be getting the benefit of my bargain. It might be, but — and I could understand your frustration. But what is deceptive about what led up to your purchase? In other words, you're suggesting that Amazon should have said, buy Alexa and we promise that there will be no ads. But Amazon doesn't say that. The question is what would a reasonable consumer believe when they purchased the Alexa or the Slingbox or your television or this microphone, which one day might be connected to the Internet? Most consumers, contrary to what the district court held, believe that when they buy a product, they own it and they have the right to use it without additional interference, without paying additional money. For example, YouTube will allow you to remove commercials from their free service for a payment of a few dollars a month. But doesn't the agreement here contemplate software changes and essentially give to Slingbox the ability to determine what the nature of the software changes is? Isn't that enough to say whatever one individual's expectations might be, they're not protected in this agreement? We don't believe so, Your Honor, because that would change the very nature of what is being sold. That would not only be breach of the duty of good faith and fair dealing by taking away what has been contracted for and what the benefit of the bargain is, but also would go against the very essence of this contract. We are selling you a Slingbox for you to use and sling your own product, your own media, wherever you are in the world. By adding this additional, very material caveat to that, late in the game, after you have made your bargain, years after you've made your bargain, is a material deviation from what has been promised and what the circumstances determine. Is there anything in the contract that refers to advertising at all? There is not, Your Honor. It's not. Well, then, if there's nothing in the agreement, how can you say that the essence of the agreement was an ad-free environment? Well, the essence of the agreement, Your Honor, is your ability to use the Slingbox. And this interferes with the use to the extent that we have alleged, the plaintiffs have alleged, that they've either stopped using it, have purchased other competing services at monetary cost to them in order to be able to enjoy their own programming, which they've already spent several hundreds of dollars and paid to Sling Media in order to have the right to do. So it goes to the essence of your ability to use this product. You might be interested in looking at our proposed amended complaint as actual photographs of the advertisements. And I think the question that the lower court should have asked is whether it was plausible, not whether it was likely, but whether it was plausible that a jury would agree that this defeated the reasonable expectations of the benefit of the plaintiff's bargains. Does the proposed amended complaint allege whether Sling developed its plan to use ads, transmit ads prior to your client's purchases? It does, Your Honor. And what paragraph would that be? In the proposed amended complaint, it goes into quite some detail about the history of Sling, about the development of the technology to deliver commercials over the Internet, about Sling's patent filings and applications and grants to be able to get the patents to be able to do that, about their selling or participating in advertising conventions, telling the advertising community that they had the ability to deliver these advertisements. None of this was disclosed to consumers. In fact, to the day of the filing of this complaint, Sling's website, all their marketing materials had nothing about advertising, and even all of the photographs of people using and enjoying their Slingbox had none of the pictures of these ads, which we claim to be so abusive. So we believe that we should have been able to file the amended complaint, even if the Court was correct about the initial complaint. And those are in paragraphs 28 to 36, Your Honor. So I'll reserve the balance of my time. Thank you. Good morning. Richard Patch for Sling Media, Inc. The District Court was absolutely correct to dismiss this case and to reject the proposed amendments as futile because the plaintiffs, the appellates, have never identified a deceptive conduct on behalf of Sling, nor, and more importantly, have they identified any cognizable injury under General Business Law, Section 349. They also ---- Could you begin by addressing the import of Kroc for the choice of law question? Sure. I believe you had exactly right. But I actually go to Finance 1, because in that case, this circuit specifically rejected the same argument they're making. In that case, they tried to look to a forum selection clause, which, in fact, was very broad and included any kind of claims to interpret the provision of the choice of law provision. And this circuit said those have different language and there's no reason to think that the scope of one thing is going to dictate the scope of the other. And in both Kroc and Finance 1 say, you look to the language of the choice of law provision. You don't look elsewhere for this particular interpretation. So I think it's clear that whether it's this agreement or this mortgage, this is limited to contract claims. You say there's no cognizable injury, but if you are getting a product that subjects you to ads, is that ---- does that not make it less valuable, at least in too many consumers? Well, first, let's separate the product from the software. Of course, they own the product. They don't own the software. Sling owns the software. They have a very limited license to utilize that software. In the first paragraph of the license agreement, Sling makes it expressed. I was just trying to address the question of injury. If you are getting a product and suddenly you're being subjected to unwanted ads, does that not lessen the value of the product? And would that not be arguably a cognizable injury? I mean, in other words, if you knew you were going to get ads, you wouldn't pay $150 for it. Well, I mean, that's the theory that was specifically rejected by the Court of Appeals in Small v. Lourillard. You can't take that position because what you've done in that case is taken the deception and turned it both into the act and the injury. Well, no, I'm not asking about whether it's deceptive. I was just trying to address whether there is an injury. I mean, is it indeed plausible that a box that subjects me to ads is less valuable than one that does not? The ads last for a few seconds. With one stroke of the key... It might not be much of an injury, but it's a little bit of an injury, it seems. It's frustration is not actionable. And at best, it's frustration. And two cases have held in the appellate division that frustration is not cognizable under Section 349. And that's all they've ever alleged here, frustration. And what they allege, the only paragraph in the proposed complaint that suggests where the injury comes from here is paragraph 35 and 36, and it says, if you had told us, we would not have purchased or we would have tried to pay less money. Those are not actionable under Section 349. You have to take the injury, namely in this case advertising, and you have to say how advertising harms you in some real tangible way. What about their theory of attention theft? They're stealing a few seconds of my time by subjecting me to these ads. Well, I mean, I don't believe that attention theft has been recognized anywhere. And we're constantly, as you've suggested earlier, subjected to advertisement. Remember, this is a media device. And what makes it completely different from the refrigerator advertisement or the other things is that when you buy this device, you're buying into a atmosphere and an environment that is replete with advertisements. It's just as likely that when they open their programming, that the programming was showing advertisement as opposed to sling showing advertisement. So what we need here, though, in every case they rely upon, there was something affirmatively done by the seller, 100% fat-free, total zero, two-year warranty, which gave the person a reasonable expectation that the product was clear and clean. Here, they have not identified anything that sling ever did that would allow a reasonable consumer buying a media product to expect an ad-free experience in perpetuity. This is years and years and years as this software has modified over time. And the way you would do that, I suggest to you, is precisely the way sling did it here. If you're going to sell a product that's going to need software and you're going to give licenses to do the software, what you would say is two things. One is we reserve all the rights that we don't expressly grant to you. We say that it could be modified and upgraded and changed. And then we say we specifically do not warrant that this product is going to meet any individual customer's expectations. When a reasonable consumer purchases a device like this, it's a piece of equipment, is there a reasonable expectation of an ad-free product? No. And why do you say that? I knew you were going to say no, but why? Because every, look at every other software that people encounter, software in this genre, when you're doing Netflix or Pandora or sling, advertisement is part of the deal. In fact, I'm going to put it just the opposite. Unless the customer came forward and said, I expect this to be an ad-free experience, will you warrant that in your license agreement? We would say, of course, no. That's one of the rights we're expressly reserving. And in the absence of some stated expectation in this particular environment, I don't think there is any reasonable expectation. Well, why isn't your adversary's argument is that this is more like the refrigerators to come than the Internet, and that what his clients purchased was the ability to sling their, the content that they were watching. They were not asking, and there might be some Time Warner ads in that content, but they weren't asking to see additional advertising inserted by your client. And that they were shocked and offended when they saw that advertising, and that in fact you're now marketing a product or your client is marketing a product where people are paying a premium for that ad-free environment that they thought was part of their original bargain. The injury has to be tangible. It can't be frustration. It can't be two seconds worth of an advertisement. And you can't buy a media product without some expectation of advertisement. And if you're going to be the one that colors that activity, you have to do it yourself. You can't imply it or impose it on a media company without, you've ever mentioned it. Remember, this is a case where sling does not promote, does not warrant, does not sell, doesn't speak to the issue. That advertisement or lack of advertisement was never mentioned in any of the documents. It does not form a part of any of this transaction. If they, the consumer, had an expectation of ad-free environment, it was up to them to raise it and ask for that color on the activity rather than read a license agreement that says we reserve all rights and we specifically don't warrant that it's going to meet your, every customer's expectations. Reading that, they say, well, gee, if I have this secret expectation. But remember, again, injury is the key here, I think, at the end of the day. Two seconds or three seconds worth of advertisement is controlled by the user, can be clicked through, can be expanded by going to a maximum screen. The device works exactly like it was always represented and warranted. There is no restrictions on use of the device. You can send it to any device. You can send as much as you want. You can do it at any time of day. Roberts. Whether there was injury or not, there would have to be a prerequisite for deceptive conduct, wouldn't there? Yes. Yes. And as I started by saying, there's no deceptive conduct here. The fact that we were looking at R&D as a part of doing natural development of the software and exploring different uses, expansions, and functions for that software is a natural thing. And that wasn't, it happened in 2009, 2011. This advertisement wasn't starting until five years later. And there was nothing current, planned, or expectation that we need to disclose. But again, I think if we were going to disclose it, the way we would do it is to say we're going to pick up those that we specifically licensed to you. Thank you. Your Honors, I'll try and be very brief. But I think the most important point I have to make is that we have heard lots of examples about media, but Sling is not a media company. It's a hardware company. Just like you buy a television, just like you have a cable box connected to that television, Sling makes hardware and software. It's not just hardware, it's also software. That's right, and so is your television, and so is a set-top box, all run with a combination. What was the deceptive conduct? The deceptive conduct is the same as would be if your television started having advertisements. The real question, I believe, is My television has advertisements all the time. Well, Your Honor, I think really what you mean is your media has advertisements. When you buy a computer, a piece of hardware, there are all sorts of advertisements loaded onto it. What you're suggesting is that companies need to issue a warranty that there are no ads, there will be no ads. Well, Judge Chin, I think if you wanted to use your computer without using that junk software that they load onto your computer, it's still usable. But as you could see from the photographs that we've attached to the proposed amended complaint, this product can no longer be used as it was intended, as a reasonable consumer would expect it to be able to be used, and that really is the gravamen of the complaint. Well, you can still sling your media. I mean, it may be affected in some ways. You have to click through the banner ads, and you can't multitask. But the ability to do the essence of what is promised in the software is still available to you. You can watch your TV programming on your computer. Well, the plaintiffs say no and say that their expectations have been defeated and they have actually spent money in order to avoid these ads. Some of the examples that my colleague gave are interesting. He talks about Spotify, I believe, and YouTube, and those are free services which you can pay money in addition to the company to get rid of the ads, which shows, as the Wu citations do, that your attention has value. GBL-349 doesn't require a pecuniary loss. It requires a loss of any sort. And by giving your value, your attention, that is a legally cognizant loss under the law. Under your theory, would Internet service providers be prohibited from playing ads on the Internet? Netflix, would Earthlink be prevented from putting up ads? I don't think so, Your Honor. I don't think that that would be implicated by this case. But I think that if your television Why not? Because that's a service and not a product. And they can change the service on a month-to-month basis. This company has actually sold a device for several hundred dollars, which they by which they bargained that you would be able to use it in the manner described in the marketing materials, which we have described in the complaint and proposed amended complaint, which you can no longer use in that manner. They have completely changed it in a way which That is true of virtually every device that is connected to electricity these days, right? My printer. My printer sends me ads now. Well, I'd be interested in talking to you about that, Your Honor. I'm not going to join the class. I'm not familiar with the details, but that to me sounds quite improper. I think that when you buy a product, it's your product. That's a reasonable assumption. Certainly, a defendant or a seller of products can say we reserve the right to sell ads or to show you ads. The gravamen and the lodestar of the 349 question is what would a reasonable consumer expect? The district court believed that a reasonable consumer, when marketing is silent about whether or not you should expect ads, that you have to be willing to accept it. As a consumer and as an attorney, I believe that that's wrong, and the court, district court, with respect, got that question wrong. Consumers have the right to expect an ad-free experience unless disclosed otherwise. We buy lots of electric domestic products from dishwashers and washing machines to televisions, and those are all being connected to the Internet. If the defendant can do what it does, then we can expect to receive advertisements through all of those devices in the future. I think that this is a first chance for a court to stand to thwart that and to say that that's not necessarily okay. It's plausibly at least not okay, and that the defendant should be forced to defend its practices and not simply have a court state that as a matter of law, it's acceptable. Unless Your Honors have any additional questions, I'll conclude my comments. Thank you very much. Thank you both. We'll take the matter under